[L. A. No. 27833. In Bank. Aug. 21, 1964.]

STAFFORD R. GRADY, as Insurance Commissioner, Plaintiff and Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Respondent; WILLIAM H. NEBLETT et al., Claimants and Appellants.

Kenny, Morris & Ibanez, Edward Sumner and Robert W. Kenny for Claimants and Appellants.

Stanley Mosk, Attorney General, Richard S. L. Roddis and Arthur C. de Goede, Deputy Attorneys General, for Plaintiff and Respondent and Defendant and Respondent.

PEEK, J.—This is an appeal from an order denying appellants' petition for attorney fees for services rendered to successful claimants in a liquidation proceeding.

In 1936 the Insurance Commissioner of the State of California, pursuant to statutory provisions, commenced proceedings against the Pacific Mutual Life Insurance Company of California which eventually resulted in the liquidation of that company. The litigation following the commissioner's action has been lengthy and involved, and was most recently and completely summarized in chronological order in *McConnell* v. *Pacific Mutual Life Ins. Co.* (1962) 205 Cal.App.2d 469 [24 Cal.Rptr. 5].

In the instant proceedings it will not be necessary for our purposes to review the whole course of litigation. The issues now presented refer only to the propriety of an allowance of

attorney fees for legal services rendered in the 1962 proceedings. From the record before us it appears that the commissioner, as the duly appointed liquidator of Pacific Mutual, came into possession of a fund of approximately $8,000,000 belonging to the shareholders of the company subject only to a contingent tax liability and undetermined claims for interest on principal amounts previously approved and purportedly paid to claimants who had been policyholders of the company. The commissioner, again as liquidator, filed a petition in the superior court requesting instructions with regard to the interest liability. He alleged therein, in addition to foregoing matters, that of the 4,895 claimants to whom the principal amounts of their claims had been tendered, 1,387 did not cash their checks and had not been located; that as commissioner he desired that "the question of interest be adjudicated, but that he not be required to make payment until after the tax questions are settled." (*McConnell* v. *Pacific Life Ins. Co., supra,* 205 Cal.App.2d 469, 475.)

It further appears from the foregoing opinion at page 475 that "The superior court issued an order to show cause, in response to which appearances were made by the State Controller, representing the 1,387 missing claimants, and attorneys representing a stockholders' protective committee and the old company. Two other attorneys representing stockholders appeared at the hearing and talked. No pleading was filed by anyone which controverted any of the allegations of the commissioner's petition. No evidence was offered on behalf of any party. After hearing the arguments of counsel the court made the order which is the subject of the present appeals. . . . The commissioner has appealed from this order for the purpose of obtaining an appellate court decision, but he maintains neutrality as to how the issues shall be decided. The old company, the controller, and two claimants, Neblett and Pearson [for whose attorneys the counsel fees are sought], have taken separate appeals."

Counsel for the claimants Neblett and Pearson, did not make an appearance in the trial proceedings, and thus appeared for the first time on appeal. They participated at all stages of proceedings thereafter. The order from which the appeal was taken by the commissioner instructed him to make payment of interest on the various claims in the total amount of $299,160. It was the court's conclusion that interest accrued only during a five-year period ending in 1946 when

the principal amount of the claims were purportedly paid. But on appeal it was held that interest had accrued instead for a 10-year period when the claims were paid in 1946; that the payment which had been made at that time was to be allocated first to the then accrued interest with the remainder to be credited against the principal amount of the claims; that interest since 1946 had continued to accrue on the balance of the principal amount of the claims outstanding, and that the total amount of such since accrued interest together with the balance of the principal remaining outstanding was $1,-182,170. This represented a net increase of $863,010 over the award by the trial court. It is alleged in the instant petition that the aforesaid attorneys appeared and performed services for all "known claimants," and that they are entitled to reasonable attorney fees from the fund of $863,010 which was added to the claimants' share by the decision on appeal.

It is appellants' contention that the right to fees herein is to be governed by the equitable rule "which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees." (*Estate of Stauffer,* 53 Cal.2d 124, 132 [346 P.2d 748].) The rule relied upon has been invoked in stockholders' derivative suits (*In re California Mut. Bldg. & Loan Assn.,* 68 Cal.App.2d 82 [155 P.2d 876]), and by interveners in such suits. (*Mann* v. *Superior Court,* 53 Cal.App.2d 272 [127 P.2d 970].) However the situation in the instant proceedings is closer akin to that presented in the case of *In re Pacific Coast Building-Loan Assn.,* 15 Cal. 2d 134 [99 P.2d 251]. In that case a contest developed in the trial court between investment certificate holders and membership shareholders of a building and loan association then in the hands of the Building and Loan Commissioner as liquidator. The commissioner petitioned the court for instructions concerning the ranking of claims. Following a hearing wherein counsel appeared on behalf of the various interests, judgment was entered for the membership shareholders, and was affirmed on appeal. Thereafter counsel representing the successful membership shareholders moved for an allowance of attorney fees. The motion was denied and the order of denial was affirmed on appeal. (15 Cal.2d 155.)

█  As pointed out in the *Pacific Coast* case, it is service "to obtain, preserve, or protect the fund" which justifies an award of attorney fees out of the fund itself. "By this means all of the beneficiaries of the fund pay their share of the expense *necessary to make it available to them.* [Citations.]" (Emphasis added.) (15 Cal.2d 155, 157-158.)  █  In that

case, as in the present case, prior to the rendering of services for which fees were claimed, the fund had been made ''available'' to the beneficiaries as evidenced by the following language at page 159: ''The proceeding was not, in the first place, a suit to obtain or protect a common fund. The fund was already there, and was under the administration of a statutory officer charged with its protection and proper distribution. Counsel for appellants did not make it available. . . . In the second place, this was not a representative suit on behalf of beneficiaries of the fund, against adversaries improperly withholding a fund. It was a proceeding initiated by the commissioner for the purpose of making an equitable and proper distribution of the fund. Appellants appeared by invitation of the court, but they did not commence nor control the proceeding. All the steps taken in the proceeding which ultimately benefited the shareholders were commenced by the commissioner and the proceedings would have followed the same course if appellants had not appeared.'' (See also *County of Tulare* v. *City of Dinuba,* 205 Cal. 111 [270 P. 201].)

Appellants here contend, however, that the fund which is sought to be charged is not the whole fund which had been secured by the liquidator for beneficiaries whose relative interests had not been determined, but rather that portion of the overall fund which, through the efforts of representatives of particular beneficiaries, was ultimately allocated to such beneficiaries and others similarly situated; and that at least as to such allocated portion of the fund they have obtained, preserved or protected such beneficiaries' interests and hence should be compensated therefrom.

In support of the foregoing appellants rely upon language above quoted that ''the proceedings would have followed the same course if appellants had not appeared,'' as excluding from an application of the rule of *Pacific Coast* those instances wherein it appears that the resolution of conflicting claims would not have met with the same degree of success had those claiming fees not participated. Appellants would attach a similar connotation to the quoted language that those claiming fees ''did not commence nor control the proceeding'' in the *Pacific Coast* case. The contention requires the further examination of the proceedings on the prior appeal, and a determination of appellants' contribution to the success thereof.

At the outset there were, in effect, two basic issues

in the prior proceedings, the first relating to the time when interest on the claims was to commence, and the second relating to the time when interest should terminate. The District Court of Appeal concluded that interest should have commenced earlier and run longer than concluded by the trial court. Only after a determination of these issues could the proper allocation between principal and interest of payments previously made be determined. The question as to the proper commencement date for interest was first posed by the commissioner in his original petition for instructions in the trial court. He further stated that he was a disinterested person and uncertain as to the proper resolution of the question of interest. However, in a memorandum of points and authorities in support of his petition for instructions, he stated that ''if interest is allowed it should run from the date of adjudication, July 22, 1936, in this case, to the date of payment of the claim.'' This is the date which was ultimately fixed on appeal as the proper date for the commencement of interest. The commissioner also set forth what the company's countercontentions might be, and the authorities in support of each position. In the District Court of Appeal the commissioner filed a ''Statement and Waiver of Opening Brief'' wherein it was declared that he remained ''a disinterested party'' and for that reason waived ''filing an Opening Brief but reserves[d] the right to file a Reply Brief.'' His aforesaid and supplemental points and authorities were made a part of the record on appeal.

In his opening brief the controller declared himself ''an interested party herein, appearing as statutory custodian of escheatable and presumptively abandoned personal property and also on behalf of all unknown claimants to principal and interest payments.'' The controller's interests on appeal were identical with those of known claimants insofar as interest was concerned. He fully briefed his contention that the 1936 date was the proper one for commencement of interest.

Neblett and Pearson, upon representations that they had relied upon the commissioner to protect the rights of claimants until advised that he had taken a disinterested position on appeal, were given permission to file a joint opening brief wherein it was recited that it was filed ''on behalf of all 'known' claimants.'' Their brief, filed some two months after that of the controller, covered essentially the same ground and authorities as did that of the controller, insofar as the commencement date for interest was concerned.

The second basic issue—the termination date of interest payments—was again first posed by the commissioner's points and authorities in his original petition for instructions. The controller urged, and fully supported in his brief on appeal, that the interest should run until final payment, as ultimately concluded by the District Court of Appeal. In the opening brief of Neblett and Pearson only bare, unsupported conclusions that interest should accrue until final payment appear.

An opposing brief was filed by the company, and closing briefs by the controller and jointly by Neblett and Pearson.

At oral argument the court was addressed only briefly by counsel for the commissioner who stated that he took a neutral position on the merits of the appeal. Arguments were made in behalf of appellants first by one of the attorneys for the claimants, by counsel for the controller who stated that he was relying in part on points previously presented by appellants' counsel and in rebuttal claimants' counsel summed up their position. The major portion of questions directed to counsel for appellants from the bench were directed to the attorneys for the claimants.

Following decision by the District Court of Appeal the company petitioned this court for hearing. Answers to the petition were filed by the controller and by Neblett and Pearson, and the petition was denied.

The trial court, in the instant proceedings, expressly found that Neblett's and Pearson's participation ''was not necessary to a full and proper presentation of the questions involved and the authorities applicable thereto.'' It further found that the ''fund out of and from which interest will be paid was not created, obtained, or preserved by Petitioners; the fund was not recovered by Petitioners for claimants'' and that ''There was before the District Court of Appeal, by the Clerk's Transcript and the Reporter's Transcript containing the points and authorities of the Commissioner and his argument to the trial court additionally to the brief of the Controller, all of the questions involved and the authorities thereon including practically all of the authorities set forth in the decision of the District Court of Appeal.''

In order to establish their instant contention appellants would thus require that we reweigh the evidence as to the necessity of their participation to the results obtained on appeal. Our review discloses an aggressive, competent and active participation in the appeal on the part of counsel for

claimants. But it also discloses that the findings of the trial court are supported by substantial evidence of the presentation of both the essential issues and the resolutions thereof which prevailed on appeal by litigants other than the claimants. We are thus precluded from reevaluating the foregoing findings, and are compelled to reject appellants' claim that they are entitled to an award of fees because the success attained was attributable to their counsels' skill and efforts.

Nor can we agree with appellants' further contention that for one reason or another their participation as a party of record was an essential ingredient on the appeal. It is claimed, for instance, that the controller had no standing as an appellant, although the issue was not dealt with by the District Court of Appeal nor was it fully developed by any party except as grounds for a petition for hearing which this court denied. It is also asserted that in any event the controller's participation did not extend to the known claimants who, without appellants' appearance, were otherwise not represented. But the trial court found on substantial evidence that ". . . it is not true that the Controller was only urging the principles of law contended for in behalf of unknown claimants. It was unequivocally the Controller's position that all claimants, whether known or unknown as to whereabouts, were entitled to interest from July 22, 1936 at seven percent per annum until date of payment. . . ." Moreover, the commissioner represented all beneficiaries (Ins. Code, § 1057), and his standing on appeal was never seriously questioned.

In further answer to appellants' contention that at least their formal appearance for the purpose of providing representation to interested parties justifies an award of counsel fees from the benefits derived by such interested parties, it is incumbent that, lacking a contractual basis, appellants demonstrate an equitable basis which in good conscience would justify an award of counsel fees from the whole of the class. (See *County of Tulare* v. *City of Dinuba,* 205 Cal. 111, 127 [270 P. 201]; cf. *Clark* v. *Goldman,* 124 F.2d 491.) We are not persuaded that the mere formality of an appearance without more would satisfy the equities. Although it is manifest that appellants in the instant case made a more substantial showing than a mere formal appearance, we are bound by the finding that such additional showing itself "was not necessary," and accordingly not itself a sufficient equitable basis for an award herein.

The attempted appeal from the nonappealable minute order

of February 1, 1963, is dismissed; the subsequent formal order denying appellants' petition for attorney fees is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Appellants' petition for a rehearing was denied September 18, 1964. Mosk, J., did not participate therein.